MGD

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Adalberto Zaldivar, Sr., | No.  CV 14-01493-PHX-DGC (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| United States Department of Veterans Affairs, et al., | |
| Defendants. | |

Plaintiff Jose Adalberto Zaldivar, Sr., who is currently confined in Arizona State Prison Complex-Eyman, brought this pro se civil rights case pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986, as well as *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Freedom of Information Act (FOIA).  (Doc. 1.)  Pending before the Court are: (1) Defendant Veterans Affairs Office of Inspector General's (OIG) Motion to Dismiss (Doc. 20), and (2) Defendant Veterans Affairs Regional Office—Phoenix (VARO) and Office of General Counsel's (OGC) Partial Motion to Dismiss (Doc. 21).  Plaintiff opposes both Motions (Docs. 24, 27).[1]

The Court will grant the Motions.

. . . .

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of responding to both motions.  (Doc. 22.)

## I.     Background

On July 1, 2014, Plaintiff filed a three-count Complaint, naming as Defendants the OIG, the VARO, and Pima County. Plaintiff alleged in Count One that he submitted FOIA requests to the VARO in 2002, 2005, and 2007 for copies of statements and letters in his veteran compensation file that had been filed against him by his former wife, Rebecca Zaldivar. The VARO responded with documents that had certain personal information redacted. In December 2007, Plaintiff filed a FOIA appeal regarding the denial of certain documents he had requested earlier that year. The VARO responded that it had given Plaintiff the documents he requested and the only information redacted was Rebecca Zaldivar's personal information, the release of which would constitute an "unwarranted invasion of personal privacy[.]" (Doc. 1 at 6.)[2] On February 14, 2008, Plaintiff appealed this decision to the OGC, claiming that the VARO's denial of this information hampered his "right to a fair trial" and that disclosing the redacted information would not invade his former wife's privacy. (*Id.*) The OGC responded on August 4, 2010 that it was denying Plaintiff's appeal after determining that releasing his former wife's personal information would constitute an invasion of privacy and that a document Plaintiff sought—a claim submitted by his former wife dated October 1, 2001—was never received by the VA and was not in Plaintiff's file.

Plaintiff submitted a fourth FOIA request to VARO on April 26, 2012, requesting various documents, including an application for apportionment to support Plaintiff's dependent spouse, notes related to that application, a VA letter dated April 3, 2012, stating that Plaintiff's former wife was entitled to benefits, and a list of names and contact information "of benefits payable claimed by surviving spouses, dependent spouses and children entitled to dependency and i[n]dem[n]ity compensation." (Doc. 1 at 8.) Plaintiff did not receive a response to this request and he filed an appeal with the VARO. On

---

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

June 21, 2012, Plaintiff received a copy of his entire claim folder except for his service treatment records, which VARO said had already been provided to him.

On May 15, 2013, Plaintiff filed a complaint with the OIG pursuant to 38 C.F.R. § 42, the Program Fraud Civil Remedies Act of 1986 (PFCRA), alleging that his former wife made false statements to the VARO.  On May 20, 2013, Plaintiff submitted additional exhibits in support of his May 15, 2013 complaint to the OIG.  The OIG notified Plaintiff on June 27, 2013 that it was responding to his May 20, 2013 complaint and that it had determined "that it does not warrant formal investigation by the OIG." (Doc. 1 at 11.)  Plaintiff filed a "Notice of disagreement" on July 18, 2013, which he said also served as a "motion for reconsideration on the matters of the initial complaint." (*Id.*) Plaintiff wrote that if there was "no right to the motion for reconsideration, then to consider this as a notice of appeal to be forwarded to the Secretary of Veterans Affairs." (*Id.*)  Plaintiff also requested that OIG provide "any 'handbook' describing their appeal process and/or administrative appeals to higher-level agency officials before seeking help from the courts for relief." (*Id.* at 11-12.)  Plaintiff did not receive a response to his request as of the date of his Complaint.  (*Id.* at 12.)

In Count Two, Plaintiff alleged that on May 20, 2013, he submitted a FOIA request to VARO for copies of various communications between Rebecca Zaldivar and the VA.  Plaintiff did not receive a response and so filed an appeal on July 15, 2013.

In Count Three, Plaintiff alleged that on June 4, 2013, he filed a FOIA request to VARO for documents requested or submitted by Rebecca Zaldivar "previously not supplied without having to make future request[s]." (Doc. 1 at 19.)  Plaintiff did not receive a response and he filed a FOIA appeal on July 15, 2013.

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a claim under FOIA and directed the OIG, the VARO, and the OGC to answer the FOIA claims in Counts One and Two of the Complaint.  The Court dismissed the remaining claims and Defendants.  (Doc. 9.)

The OIG seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject matter jurisdiction over it. (Doc. 20 at 2.) The VARO and OGC filed a partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that three of Plaintiff's five claims against them are barred by the statute of limitations.[3] (Doc. 21 at 2-3.)

## II.    OIG's Motion to Dismiss

### A.    Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be a facial or a factual challenge to the existence of federal jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge alleges that the pleadings are insufficient to support subject matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a facial challenge, the district court must accept the allegations of the complaint as true. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)). A factual challenge alleges that there is no actual existence of jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. When a party makes a factual challenge, the court is not required to presume the truth of the allegations and may consider other properly presented evidence in the record for the purpose of determining the existence of subject matter jurisdiction. *Id.* The party asserting subject matter jurisdiction has the burden to prove such jurisdiction, regardless of whether it is the movant. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008).

### B.    Facial Challenge to OIG's Investigation Decision

#### 1.    Parties' Arguments

OIG asserts that it is making a facial challenge to Plaintiff's claim regarding the OIG's decision not to launch a formal investigation of his complaint. Thus, the Court must accept as true Plaintiff's Complaint allegations. *Holy See*, 557 F.3d at 1073.

---

[3] In their Motion, the VARO and OGC also moved to strike portions of Plaintiff's Complaint, which the Court denied without prejudice. (Doc. 22.)

- 4 -

OIG argues that this Court lacks jurisdiction over Plaintiff's failure-to-investigate claim because there has been no waiver of sovereign immunity. OIG further argues that under the Inspector General Act of 1978, 5 U.S.C. app. §§ 1, et seq., the agency is afforded "absolute discretion in how investigations are conducted," thus precluding any claim by Plaintiff under the Administrative Procedure Act (APA). (Doc. 20 at 3.) OIG cites to the VA's Standards for Implementing the PFCRA to argue that the regulation "vests complete discretion in the VA-OIG to make an initial determination of whether the VA-OIG believes 'that an action under the [PFCRA] may be warranted' before any obligation to refer a matter to the VA-OGC arises." (Doc. 29 at 2, citing 38 C.F.R. § 42.4(c).) OIG also argues that Plaintiff lacks constitutional standing to challenge the OIG's decisions under the PFCRA because he is a third party, notwithstanding his claim that he is a victim of his former wife's alleged misconduct.

Plaintiff responds that "sovereign immunity does not grant one a discretion on whether [] or not to investigate any claim." (Doc. 24 at 3.) Plaintiff asserts that he "is not asking that the sovereign immunity enjoyed by the VA-OIG be waived, or that the PFCRA act as a waiver, thereof." (*Id.* at 5.) Plaintiff contends that as a veteran and the "principle party" he is owed a duty to investigate" because he has "been held accountable and garnishment implemented for past overpayments provided to a fiduciary (Plaintiff's former spouse)." (*Id.* at 3.) Plaintiff argues that OIG "should be held accountable for its failure to act and aiding or abetting false, fictitious or fraudulent claims."[4] (*Id.* at 7.)

**2. Discussion**

  **a. APA**

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S.

---

[4] In his Response, Plaintiff again attempts to assert a claim under *Bivens*, stating that he is suing Defendants in their individual capacity. (Doc. 24 at 4.) Plaintiff, though, has only named federal agencies in his suit, and a**Error! Main Document Only.** *Bivens* action will not lie against the United States or its agencies. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994).

502, 513, 514 (2009). Generally, a plaintiff must be seeking non-monetary relief for legal wrongs resulting from a final action undertaken by an agency or by an agency officer or employee. *Id.* (citing *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, __ U.S. __, 132 S. Ct. 2199, 2207 (2012)). "[T]he APA does not apply if the 'agency action is committed to agency discretion by law' or if 'statutes preclude judicial review.'" *City of Oakland v. Lynch*, 798 F.3d 1159, 1165 (9th Cir. 2015) (quoting 5 U.S.C. § 701(a)(1), (2)). The Supreme Court has held that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985) (noting that "when an agency refuses to act it generally does not exercise its coercive power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect"). While the exception for actions "committed to agency discretion" is narrow, it includes "agency refusals to institute investigative or enforcement proceedings, unless Congress has indicated otherwise." *Id.* at 838.

Here, the OIG made the decision not to investigate Plaintiff's complaint regarding his former wife. This decision falls squarely within OIG's discretion to refuse to institute investigative or enforcement proceedings and is not reviewable under the APA. *See Heckler*, 470 U.S. at 831-32. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claim against OIG regarding its decision not to investigate his complaint.

### b. PFCRA

The PFCRA "was enacted in 1986 to allow administrative agencies to pursue remedies for false or fraudulent claims for benefits or payments." *Roberts v. Shinseki*, 647 F.3d 1334, 1349 (Fed. Cir. 2011) (noting that the VA's implementing regulations provide that "allegations of liability under PFCRA are referred to the VA OIG, who conducts an investigation and reports to the VA General Counsel"). The PCFRA "was not enacted for citizens to utilize as a cause of action against an administrative agency . . . ." *Ellis v. Dep't of Veterans' Affairs*, No. CV-05-257-RHW, 2006 WL 224041, at *1

1 (E.D. Wash. Jan. 27, 2006) (citing 31 U.S.C. § 3102 and *Orfanos v. Dep't of Health & Human Servs.,* 896 F. Supp. 23, 24-25 (D.D.C. 1995)). Plaintiff cannot rely on the PFCRA to require OIG to conduct an investigation or to grant subject matter jurisdiction over Plaintiff's claim in this Court.[5]

### C. Factual Challenge Regarding Handbook

OIG asserts that it is making a factual challenge to Plaintiff's claim regarding the appeals handbook, which means the Court can review evidence beyond the complaint without converting Defendants' Motion to one for summary judgment. *Safe Air for Everyone*, 373 F.3d at 1039. When a defendant mounts a factual attack on subject matter jurisdiction, "the plaintiff must support [his] jurisdictional allegations with 'competent proof.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 99-97 (2010)). Such an attack uses the same evidentiary standard as used at summary judgment. *Id.* (citations omitted). While the Plaintiff generally bears the burden of proving subject matter jurisdiction by a preponderance of evidence, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* at 1121-22 (citations omitted).

Federal jurisdiction under FOIA "is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 135, 150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).

### 1. Parties' Arguments

OIG argues that Plaintiff's FOIA claim regarding an appeals handbook should be dismissed for lack of subject matter jurisdiction because an appeals handbook does not exist. For support, Defendant has provided the Declaration of Jason Woodward, who is

---

[5] Because the Court lacks jurisdiction over Plaintiff's PFCRA claim, the Court need not reach Defendants' argument regarding standing.

- 7 -

OIG's Deputy Assistant Inspector General for Management and Administration, which operates OIG's Hotline Division. (Doc. 20-1 at 1 ¶¶ 1-3.) According to Woodward, "there is no right to appeal from a decision of the VA-OIG Hotline Division to decline to launch a formal investigation of a complaint." (*Id.* at 2 ¶ 6.) Woodward attached a copy of the letter OIG Hotline Division sent to Plaintiff in response to his May 15, 2013 complaint. (*Id.* ¶ 7; Doc. 20-1 at 10.) The letter is from a Senior Analyst, "Dee," at the OIG Hotline who said that OIG had not selected Plaintiff's complaint "for formal review as an OIG case." (Doc. 20-1 at 10.) The letter informed Plaintiff that "[t]here is no appeal process on the disposition of a Hotline complaint. This is our final response on this issue."[6] (*Id.*)

Woodward asserts that because there is no right to appeal OIG's decision regarding a Hotline complaint, "there is no handbook outlining the procedures to follow if an individual wishes to appeal from such a decision." (Doc. 20-1 at 2 ¶ 8.) If there were such a handbook, Woodward states that he would be aware of it. (*Id.*) Woodward also provided a copy of the VA's "OIG Hotline Frequently Asked Questions" from its website, which states that "[t]here are no appeal rights from a decision by the Hotline Division as to the actions taken on a particular complaint." (Doc. 20-1 at 8.)

Plaintiff responds that this Court "has jurisdiction because Plaintiff has the right to information on [OIG's] policies, procedures and appeals towards the exhaustion of remedies." (Doc. 24 at 10.) Plaintiff cites to FOIA's requirements that each agency prepare and make publicly available "reference materials or a guide for requesting records or information from the agency," including "a handbook for obtaining various types and categories of public information from the agency pursuant to chapter 35 of Title 44, and under this section." (Doc. 24 at 10, citing 5 U.S.C. § 552(g).)

Plaintiff takes issue with Woodward's Declaration, arguing that Woodward does not have personal knowledge of the facts set forth in his Declaration. (Doc. 24 at 12.)

---

[6] Woodward notes that the letter from OIG is incorrectly dated April 24, 2013, when it was actually mailed to Plaintiff on or about May 24, 2013. (Doc. 20-1 at 2 ¶ 7.)

- 8 -

Plaintiff asks the Court to compare the letter from Senior Analyst "Dee" attached to Woodward's Declaration, which responded to Plaintiff's May 15, 2013 complaint, and a different letter he received dated June 27, 2013 from Senior Analyst "DORA," responding to Plaintiff's May 20, 2013 additional evidence. (Doc. 25 at 22.) The letter from "DORA" states: "Our staff has reviewed your complaint and determined that it does not warrant formal investigation by the OIG. Our review did not result in the creation of an investigation report. This is our final response on this issue." (*Id.*) Plaintiff asserts that this letter does not say that he lacks appeal rights.

### 2. Discussion

The Court lacks jurisdiction over Plaintiff's FOIA claim pertaining to his request to OIG for an appeals handbook. Agency possession of the requested documents is 'an indispensable prerequisite to liability in a suit under FOIA.'" *Kissinger*, 445 U.S. at 155. OIG has provided evidence in the form of a sworn declaration that no such handbook exists, and has provided evidence that there is no appeal of an OIG decision not to investigate. Plaintiff has not offered any evidence to the contrary.

When an agency does not possess a record or document, it cannot be claimed that the document was improperly withheld. Therefore, this Court lacks jurisdiction over Plaintiff's claim regarding the handbook and this claim against OIG will be dismissed.

### III. VARO and OGC's Motion to Dismiss

VARO and OGC seek to dismiss claims related to three of Plaintiff's five FOIA requests on the basis that those claims are time-barred under 28 U.S.C. § 2401(a). (Doc. 21 at 2.) They seek dismissal of Plaintiff's FOIA requests made on October 20, 2002, April 13, 2005, and July 10, 2007.

### A. Legal Standard

The statute-of-limitations defense may be raised in a motion to dismiss "only when the running of the statute is apparent from the face of the complaint." *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th

1 Cir. 2010)). "A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (internal citations and quotation marks omitted). In order to dismiss a claim as untimely on a Rule 12(b)(6) motion, it must "appear[ ] beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* at 1207. Thus, "[i]f, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citation omitted).

Generally, the Court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion. *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). But the incorporation-by-reference doctrine allows material that is attached to the complaint to be considered, as well as unattached evidence on which the complaint relies if: "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* at 999.

If a specific statute is silent regarding the time period for filing an action, then the Court looks to 28 U.S.C. § 2401(a), which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." *Nesovic v. U.S.*, 71 F.3d 776, 778 (9th Cir. 1995). Because FOIA does not include its own statute of limitations, the six-year limitations period under § 2401(a) applies. *Howard v. Pritzker*, 775 F.3d 430, 437 (D.C. Cir. 2015).

"A cause of action against an administrative agency 'first accrues,' within the meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court." *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56 (D.C. Cir. 1987). Generally, a FOIA claimant must exhaust administrative remedies before filing a lawsuit. *Id.*; *see also In re Steele*, 799 F.2d 461, 465-66 (9th Cir.

- 10 -

1986) ("Exhaustion of a part[y']s administrative remedies is required under the FOIA before that party can seek judicial review.").

Under FOIA, administrative remedies are exhausted "if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. § 552(a)(6)(C)(i). The paragraph requires the agency to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request" and to notify the requester of the decision and the right to appeal to the head of the agency any "adverse determination." *Id.* § 552(a)(6)(A)(i). The statute also requires an agency to make a determination with respect to any appeal within 20 business days and, if the denial of a request for records is upheld, then the agency must notify the requester of the provisions for judicial review. *Id.* § 552(a)(6)(A)(ii). Thus, a FOIA claim accrues either (1) when an agency fails to meet the 20-day deadline after receiving a FOIA request or an appeal from a denial of a FOIA request, or (2) when an agency makes a timely response to an appeal from a timely adverse determination of an initial FOIA request. *Spannaus*, 824 F.2d at 58-59. The agency may extend the time of its determination by an additional 10 days if it provides notice to the requestor in writing. 5 U.S.C. § 552(a)(6)(B). "If an agency fails to respond to a request within the time provided, 'constructive' exhaustion of administrative remedies has occurred and the requestor may seek judicial review." *Bush v. Dep't of Justice*, No. C 08-3842 JF(RS), 2008 WL 5245046, at *3 (N.D. Cal. Dec. 16, 2008) (citing *Spannaus*, 824 F.2d at 58). "Once constructive exhaustion occurs, any available administrative appeal—i.e., actual exhaustion—becomes permissive in the sense in which the term is used here; the requester may pursue it, but his failure to do so does not bar a lawsuit." *Spannaus*, 824 F.2d at 58.

### B. Plaintiff's FOIA Requests

#### 1. October 20, 2002 FOIA Request

Plaintiff made his first FOIA request to VARO on October 20, 2002, requesting copies of statements and letters in his VA compensation file from Rebecca Zaldivar.

(Doc. 1 at 4.) On November 16, 2002, VARO provided "copies of the documents to and from Plaintiff's wife," some "with personal identifiers or information redacted, others provided without their enclosures." (*Id.*) Plaintiff does not state that he appealed this response. VARO and OGC argue that Plaintiff's cause of action as to this FOIA request accrued, at the latest, on or about November 16, 2002, when Plaintiff was provided documents in response to his request. (Doc. 21 at 4.)

### 2.    April 13, 2005 FOIA Request

Plaintiff made his second FOIA request to VARO on April 13, 2005, requesting copies of "supporting documents" and a copy of a VA letter dated January 6, 2004 to Plaintiff. (Doc. 1 at 4.) Plaintiff also sent a "Notice of Disagreement" to VARO regarding a VARO decision dated March 16, 2005 "and exercised the right to a personal hearing to present evidence and arguments on important points in plaintiff's claim." (*Id.*) On April 22, 2005, VARO provided four "additional copies of documents submitted by Rebecca Zaldivar since November 2002," with addresses and personal information redacted, and a copy of a letter dated January 6, 2005. (*Id.* at 4-5.) Plaintiff does not state that he appealed this response, and he does not explain what he means by a "Notice of Disagreement" or what the March 16, 2005 decision entailed. VARO and OGC argue that the cause of action as to this second FOIA request accrued on or about April 22, 2005, when VARO provided the documents in response to Plaintiff's request. (Doc. 21 at 4.)

### 3.    July 10, 2007 FOIA Request

Plaintiff made his third FOIA request to VARO on July 10, 2007, requesting "specific documents mentioned in documents from the previous two request releases." (Doc. 1 at 5.) VARO responded on July 18, 2007 with a request for additional time to obtain the records. (*Id.*) On September 25, 2007, VARO provided 17 sets of documents containing duplicates from the 2002 and 2005 releases, as well as other documents not previously disclosed, and VARO withheld "other documents." (*Id.*) On or about December 20, 2007, Plaintiff filed an appeal over VARO's denial of "certain requested

1 records." (*Id.*) VARO responded on December 28, 2007, "denying the request" and noting that it had provided the information Plaintiff had requested and that the only information redacted was Rebecca Zaldivar's personal information, which was exempt from disclosure under 5 U.S.C. § 552(b)(6). (*Id.* at 6.) On February 14, 2008, Plaintiff filed an appeal to OGC. OGC acknowledged receipt of the appeal on March 4, 2008, and assigned case #13527 to it. On December 10, 2008, Plaintiff "inquired into the status of the FOIA appeal." (*Id.* at 7.) OGC responded to the FOIA appeal on August 4, 2010, apparently denying the appeal and upholding the exemptions claimed. (*Id.*)

VARO and OGC argue that the cause of action on this FOIA claim accrued on or about April 1, 2008, 20 business days after OGC acknowledged receipt of the appeal on March 4, 2008. (Doc. 21 at 4.)

**C.     Discussion**

Plaintiff argues that the statute of limitations does not preclude his claims because the alleged FOIA violations "should be considered to be a 'continuing wrong' and a 'continuing violation.'" (Doc. 27 at 3, citing cases from the Sixth, Tenth, and Seventh Circuits.) Plaintiff contends that "[a]s long as Defendants continue to deprive Plaintiff access to records, . . . further injury cannot be avoided or the wrong corrected." (*Id.*) Plaintiff argues that "the misrepresentation and concealment of documents released or provided to others to use in court proceedings to Plaintiff['s] detriment violates FOIA and deprive[s] Plaintiff of his constitution[al] rights." (*Id.* at 3-4.)

Defendants respond that Plaintiff's application of the "continuing violation" doctrine, which is an equitable exception to the timely filing requirement, does not apply here because a "potential plaintiff in a FOIA action would immediately suspect that he has a claim upon the agency's timely response to the FOIA request, or upon the passage of 20 days after making the request or appeal when no response has been forthcoming." (Doc. 31 at 3-4.) Defendants argue that this is "a finite deadline, which is easily ascertainable in either circumstance" and so there is no cause to extend the six-year limitations period to bring a FOIA action in these three instances. (*Id.* at 4.)

- 13 -

The continuing violation doctrine does not apply to Plaintiff's first three FOIA requests. The cases Plaintiff relies on are not FOIA cases and do not support application of the doctrine here. The first case cited by Plaintiff, *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009), involved federal takings and due process claims. The court held that the continuing violations doctrine did not extend the limitations period where the damage was complete at a fixed point in time. The second case, *Tiberi v. Cigna Corporation*, 89 F.3d 1423 (10th Cir. 1996), involved New Mexico contract and tort law and noted that the continuing violation doctrine could not be applied where the plaintiff's injury "is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *Id.* at 1431 (internal citation and quotations omitted). The two Seventh Circuit cases cited by Plaintiff involved an Eighth Amendment medical care claim under 42 U.S.C. § 1983 (*Heard v. Sheahen*, 253 F.3d 316 (7th Cir. 2001)) and a copyright infringement claim (*Taylor v. Meirick*, 712 F.2d 1112, 1118-19 (7th Cir. 1983)). Neither case supports application of the doctrine to Plaintiff's three FOIA requests made between 2002 and 2007 because Plaintiff would know by the expiration of the applicable response date whether he had the documents he sought or not.

In response to Plaintiff's first FOIA request, VARO provided documents on November 16, 2002. Plaintiff does not say he ever appealed that response. Therefore, the FOIA claim accrued on November 16, 2002, and Plaintiff was obligated to file a lawsuit on that claim by November 16, 2008.

In response to Plaintiff's second FOIA request, VARO provided documents on April 22, 2005. Plaintiff does not say that he appealed this response. Therefore, the FOIA claim accrued on April 22, 2005, and Plaintiff was obligated to file a lawsuit by April 22, 2011.

Plaintiff filed his third FOIA request on July 10, 2007. After requesting additional time, VARO provided documents on September 25, 2007. Plaintiff filed an appeal over the denial of certain records around December 20, 2007, and VARO denied the appeal on December 28, 2007. Plaintiff filed an appeal to the OGC on February 14, 2008, and

1  OGC acknowledged receipt of Plaintiff's appeal on March 4, 2008, assigning it case #13527. There is no indication in Plaintiff's Complaint that anything more happened until Plaintiff made an inquiry on December 10, 2008 about the status of his appeal. Therefore, Plaintiff constructively exhausted this claim 20 business days after March 4, 2008, or April 1, 2008, s*ee Spannaus*, 824 F.2d at 58, and Plaintiff was required to file suit on this claim by April 1, 2014. Plaintiff did not file this lawsuit until July 1, 2014.

The Court accordingly will dismiss Plaintiff's claims regarding the FOIA requests he submitted on October 20, 2002, April 13, 2005 and July 10, 2007, as barred by the statute of limitations.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant OIG's Motion to Dismiss (Doc. 20) and Defendants VARO and OGC's Partial Motion to Dismiss (Doc. 21).

(2) Defendant OIG's Motion to Dismiss (Doc. 20) is **granted** and OIG is dismissed from this action.

(3) Defendants VARO and OGC's Partial Motion to Dismiss (Doc. 21) is **granted**. Plaintiff's claims regarding the FOIA requests he submitted on October 20, 2002, April 13, 2005 and July 10, 2007 are dismissed.

(4) The remaining claims in this action are against VARO and OGC relating to Plaintiff's April 26, 2012 FOIA request in Count One and Plaintiff's May 20, 2013 FOIA request in Count Two.

Dated this 27th day of October, 2015.

*David G. Campbell*
David G. Campbell
United States District Judge

- 15 -