MGD

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Adalberto Zaldivar, Sr., | No.  CV 14-01493-PHX-DGC (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| United States Department of Veterans Affairs, et al., | |
| Defendants. | |

Plaintiff Jose Adalberto Zaldivar, who is currently confined in the Arizona State Prison Complex-Eyman, brought this case pursuant to the Freedom of Information Act (FOIA) and the Privacy Act (PA).  (Doc. 1.)  Pending before the Court is a Motion for Summary Judgment filed by the Department of Veterans Affairs Regional Office—Phoenix (VARO) and the Department of Veterans Affairs Office of General Counsel (OGC).[1]  (Doc. 49.)  The Court will grant the Motion and terminate this action.

**I.     Background**[2]

In his Complaint, Plaintiff alleged that he submitted six FOIA/PA requests to the VARO between 2002 and 2013, but that VARO failed to provide proper responses to

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response.  (Doc. 52.)

[2] The full background of this action is set forth in the Court's October 27, 2015 Order.  (Doc. 34.)

1   these requests and the OGC denied an appeal filed by Plaintiff.  (Doc. 1.)  Plaintiff also

2   alleged that the Veterans Affairs Office of Inspector General (OIG) failed to respond to

3   his request for an appeals handbook.  (*Id*.)  On screening under 28 U.S.C. § 1915A(a), the

4   Court determined that Plaintiff stated a claim and directed the OIG, the VARO, and the

5   OGC to answer the claims in Counts One and Two of the Complaint, and dismissed the

6   remaining claims and Defendants.  (Doc. 9.)  Subsequently, the OIG filed a Motion to

7   Dismiss the claim against it for lack of jurisdiction (Doc. 20), and the VARO and the

8   OGC filed a Partial Motion to Dismiss three claims based on the statute of limitations

9   (Doc. 21).

10   On October 27, 2015, the Court granted both Motions to Dismiss, leaving only

11   two remaining claims against the VARO and the OGC: (1) Plaintiff's April 26, 2012

12   FOIA/PA request in Count One, and (2) Plaintiff's May 20, 2013 FOIA/PA request in

13   Count Two.  (Doc. 34.)  The VARO and the OGC now move for summary judgment on

14   the two remaining requests.

15   **II.    Summary Judgment**

16   A court "shall grant summary judgment if the movant shows that there is no

17   genuine dispute as to any material fact and the movant is entitled to judgment as a matter

18   of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

19   (1986).   Under summary judgment practice, the moving party bears the initial

20   responsibility of presenting the basis for its motion and identifying those portions of the

21   record, together with affidavits, which it believes demonstrate the absence of a genuine

22   issue of material fact. *Id.* at 323.  If the moving party meets its initial responsibility, the

23   burden then shifts to the opposing party who must demonstrate the existence of a material

24   factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

25   **III.   Discussion**

26   Defendants argue that (1) Plaintiff did not exhaust his administrative remedies

27   with respect to the April 26, 2012 request, (2) the agency's searches in response to both

28

- 2 -

1    requests were adequate, and (3) any redactions of the personal information of Plaintiff's

2    former spouse in response to the May 30, 2013 request were proper.  (Doc. 49.)

3              **A.      April 26, 2012 Request**

4                   **1.      Relevant Facts**

5              By letter dated April 26, 2012, Plaintiff filed a FOIA/PA request with the VARO

6    seeking the following information:

7              (1)    The application for VA compensation for Plaintiff's "dependent spouse,"

8    referred to as an "application for apportionment";

9              (2)    A VA letter by Ms. LaCenia dated April 3, 2012;

10             (3)    Correspondence in response to the application for apportionment;

11             (4)    The address of the OIG;

12             (5)    Notes, telephone calls, and inquiries regarding the application for

13   apportionment;

14             (6)    All documentation, applications, inquiries or requests made by letter or

15   telephone regarding Plaintiff's VA compensation claim, including the names, addresses

16   and phone numbers of the requesting part(ies);

17             (7)    The names, addresses, and phone numbers of spouses and children entitled

18   to dependency and indemnity compensation.

19   (Doc. 51 (Defs.' Statement of Facts ("DSOF")) ¶ 1; Doc. 51-2 at 2-8.)[3]

20             The VARO received Plaintiff's request on May 4, 2012 and responded on May 30,

21   2012 by sending Plaintiff a copy of his entire claims file.  The VARO explained that it

22   did not include Plaintiff's military service treatment records (STR) because those had

23   been provided to him on November 10, 2011 in response to a previous request.  (Doc. 51

24   ¶¶ 1, 2; Doc. 51-2 at 10.)   The entire claims file and STR is over 3,000 pages, and,

25   according to the VARO's FOIA/PA Officer, Marcelle Jeanisse, the VARO is the only

26   location at the VA where "one would reasonably expect to find documents responsive to

27   _____

28             [3] The citation refers to the document and page number generated by the Court's
     Case Management/Electronic Case Filing system.

1    Plaintiff's April 26, 2012 request."  (Doc. 51 ¶¶ 2-3; Doc. 51-3 at 3 ¶ 11.)  Plaintiff

2    received the VARO's response, totaling 2,476 pages, on June 21, 2012.  (Doc. 66 ¶ 2;

3    Doc. 65 ¶ 30.)

4          Before he received the VARO's response, Plaintiff, by letter dated June 4, 2012,

5    filed an appeal with the VARO, asserting that he had not received any documents in

6    response to his April 26, 2012 request.  (Doc. 51 ¶ 4; Doc. 51-2 at 12-24.)  The VARO

7    noted on Plaintiff's appeal letter that the FOIA request had already been completed and

8    took no further action on the appeal.  (*Id.* ¶ 6.)  Plaintiff does not dispute that this notation

9    was made on his appeal but he denies "the validity of those reasons."  (Doc. 66 ¶ 6.)

10         By letter dated June 13, 2012, the Disabled American Veterans, acting as

11   Plaintiff's designated representative, requested Plaintiff's claims file "to include STR's

12   and Apportionments."  (Doc. 51 ¶ 7; Doc. 51-2 at 26.)  The VARO "Triage Team" that

13   processes incoming mail noted on the letter, "FOIA Request Complete 5/30/2012

14   Already!!," and the VARO took no further action regarding the request.  (Doc. 51 ¶ 8;

15   Doc. 51-2 at 26.)

16              **2.      Exhaustion**

17              **a)      Legal Standard**

18         FOIA requires that, upon receipt of a FOIA request, an administrative agency shall

19   "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) . . .

20   whether to comply with such request and shall immediately notify the person making

21   such request of such determination and the reasons therefor, and of the right of such

22   person to appeal to the head of the agency any adverse determination. . . ."  5 U.S.C.

23   § 552(a)(6)(A)(i).  Likewise, an agency must make a determination within 20 days of

24   receipt of an appeal.  5 U.S.C. § 552(a)(6)(A)(ii).  If an agency does not respond to a

25   FOIA request within the applicable time period, the requester may file a lawsuit, but "this

26   option lasts only up to the point that an agency actually responds.  Once the agency has

27   responded to the request, the petitioner may no longer exercise his option to go to court

28   immediately.    Rather,  the  requester  can  seek  judicial  review  only  after  he  has

1   unsuccessfully appealed to the head of the agency as to any denial and thereby exhausted
2   his administrative remedies." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir.
3   1990).

4    "Exhaustion of administrative remedies is generally required before filing suit in
5   federal court so that the agency has an opportunity to exercise its discretion and expertise
6   on the matter and to make a factual record to support its decision." *Oglesby*, 920 F.2d at
7   61 (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)).   When administrative
8   remedies have not been exhausted prior to suit, a FOIA claim is subject to dismissal. *See*
9   *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (noting that an appeal made before
10  an agency has acted on a FOIA request deprives the agency of the "opportunity to
11  consider the very issues that [the plaintiff] has raised in court").

12  **b)** **Analysis**

13   Defendants argue that Plaintiff did not comply with VA regulations by filing a
14  proper appeal with the OGC within 60 days of an adverse determination, as required by
15  38 C.F.R. § 1.559(b) and (d).  (Doc. 49 at 6.)  Rather, Plaintiff filed a "premature appeal"
16  with the VARO, and he never filed a proper appeal with the OGC after receiving
17  VARO's timely response to the April 26, 2012 request.  (*Id.* at 6-7.)

18   Plaintiff responds that he constructively exhausted his administrative remedies by
19  filing a timely appeal to the VARO to the attention of "FOIA/Privacy Act Appeals
20  Officer" by letter dated June 4, 2012.  (Doc. 64 at 10.)  Plaintiff asserts that he was
21  unaware of 38 C.F.R. § 1.559 "due to circumstances beyond [his] control as to access to a
22  meaningful adequate law library," and that he was using a 2008 version of the
23  regulations.  (*Id.*; Doc. 65 at 7 ¶ 43(d).)  As to VARO's contention that it timely
24  responded to Plaintiff's FOIA request on May 30, 2012, Plaintiff says the agency
25  responded by "flooding [him] with excessive documents without having to provide
26  specific documents requested in the April 26, 2012 FOIA/Privacy Act Request, especially
27  not having to answer to the phone conversation contact with VA Rep. Ms. LaCenia on
28  April 26, 2012." (*Id.*)

1        There is no dispute that the VARO received Plaintiff's FOIA request on May 4,

2  2012, and responded by letter dated May 30, 2012, less than 20 business days after

3  receiving the request, by providing Plaintiff with his entire claims file, minus the SRTs.

4  Thus, the VARO timely responded to Plaintiff's FOIA request.  Plaintiff's attempted

5  appeal, claiming he did not receive a response, was filed before he received the VARO's

6  response on June 21, 2012.[4]  (Doc. 51-2 at 12-14; Doc. 66 ¶ 2.)  Plaintiff does not claim

7  that he filed any appeal challenging the adequacy of the VARO's response after he

8  received it.  By not filing an appeal on the VARO's actual response, Plaintiff deprived

9  the agency of "an opportunity to exercise its discretion and expertise on the matter and to

10  make a factual record to support its decision." *Oglesby*, 920 F.2d at 61.

11        Because Plaintiff did not file an appeal with respect to the VARO's response to his

12  April 26, 2012 FOIA request, he did not exhaust his administrative remedies.

13  Accordingly, the Court will grant summary judgment to Defendants on Plaintiff's

14  April 26, 2012 request in Count One for failure to exhaust administrative remedies.

15        **3.     Adequacy of the Search**

16        Alternatively, the Court will grant summary judgment to Defendants on the

17  adequacy of the VARO's search for records in response to Plaintiff's FOIA/PA request.

18        **a)     Legal Standard**

19        FOIA requires that an agency responding to a request "demonstrate that it has

20  conducted a search reasonably calculated to uncover all relevant documents." *Lahr v.*

21  *Nat'l Transp. Safety Bd*., 569 F. 3d 964, 986 (9th Cir. 2009) (quoting *Zemansky v. EPA*,

22  767 F.2d 569, 571 (9th Cir. 1985)).  Such a showing can be made by "reasonably

23  detailed, nonconclusory affidavits submitted in good faith." *Zemansky*, 767 F.2d at 571.

24  Such affidavits or declarations are entitled to "a presumption of good faith, which cannot

25  be rebutted by purely speculative claims about the existence and discoverability of other

26

27        [4] Plaintiff asserts in his Complaint that the VARO's response is postmarked

28  June 1, 2012, and he appears to allege that his delay in receiving the response was due to
prison officials.  (*See* Doc. 1 at 8-9.)

1  documents."  *Lawyers' Comm. for Civil Rights of S.F. Bay Area v. U.S. Dep't of*

2  *Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008).  An agency "need not set forth

3  with meticulous documentation the details of an epic search for the requested records."

4  *Id.* (quotation omitted).  "[T]he issue to be resolved is not whether there might exist any

5  other documents possibly responsive to the request, but rather whether the *search* for

6  those documents was *adequate*."  *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d

7  1325, 1328 (9th Cir. 1995) (quotation omitted) (emphasis in original).  In general, the

8  sufficiency of a search is determined by the "appropriateness of the methods" used to

9  carry it out, "not by the fruits of the search."  *Iturralde v. Comptroller of the Currency*,

10  315 F.3d 311, 315 (D.C. Cir. 2003).  The failure of an agency "to turn up a particular

11  document, or mere speculation that as yet uncovered documents might exist, does not

12  undermine the determination that the agency conducted an adequate search for the

13  requested records."  *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

14  Once a search has been conducted, FOIA requires disclosure unless the records

15  fall within one of nine narrow exemptions.  *See* 5 U.S.C. § 552(b); *Minier v. CIA*, 88 F.3d

16  796, 800 (9th Cir. 1996).  These "limited exemptions do not obscure the basic policy that

17  disclosure, not secrecy, is the dominant objective of the Act."  *Dep't of Interior v.*

18  *Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal citation omitted).

19  The exemptions "have been consistently given a narrow compass," and agency records

20  that "do not fall within one of the exemptions are improperly withheld."  *Dep't of Justice*

21  *v. Tax Analysts*, 492 U.S. 136, 151 (1989) (quotation omitted).

22  "To carry their summary judgment burden, agencies are typically required to

23  submit an index and 'detailed public affidavits' that, together, 'identify [ ] the documents

24  withheld, the FOIA exemptions claimed, and a particularized explanation of why each

25  document falls within the claimed exemption.'"  *Yonemoto v. Dep't of Veterans Affairs*,

26  686 F.3d 681, 688 (9th Cir. 2012).  These submissions—commonly referred to as a

27  *Vaughn* index—"must be from affiants who are knowledgeable about the information

28  sought and detailed enough to allow the court to make an independent assessment of the

1    government's claim of exemption." *Id.* (internal quotation omitted).  Whether by *Vaughn*

2    index or by affidavit or some combination of the two, the government must "provide

3    enough information, presented with sufficient detail, clarity, and verification, so that the

4    requester can fairly determine what has not been produced and why, and the court can

5    decide whether the exemptions claimed justify the nondisclosure." *Fiduccia v. U.S.*

6    *Dep't. of Justice*, 185 F.3d 1035, 1043 (9th Cir. 1999).  "To justify withholding, the

7    government must provide tailored reasons in response to a FOIA request.  It may not

8    respond with boilerplate or conclusory statements." *Shannahan v. IRS*, 672 F.3d 1142,

9    1148 (9th Cir. 2012).

10    Ultimately, the threshold issue on a motion for summary judgment is whether the

11    agency's explanations are full and sufficiently specific to afford the FOIA requester a

12    meaningful opportunity to contest, and the district court an adequate foundation to

13    review, the soundness of the withholding. *See Wiener v. FBI*, 943 F.2d 972, 977-79 (9th

14    Cir. 1991) (noting that specificity is the defining requirement of the *Vaughn* index).

15    **b)    Analysis**

16    In his Declaration, FOIA/PA Officer Jeanisse explains that the VARO provided

17    Plaintiff "the entirety of his claims folder minus his" STRs, which were provided to

18    Plaintiff on November 20, 2011.  (Doc. 51-3 at 3, ¶ 9.)  Jeanisse avers that other than

19    Plaintiff's claims file, "there is no other location in which one would reasonably expect to

20    find documents responsive to Plaintiff's April 26, 2012 request." (*Id.*)

21    Plaintiff responds that the VARO "assumes that there is no requirement that an

22    agency search all possible sources when it believes all responsive documents are likely to

23    be located in one place—Plaintiff's 'entire claim file.'"  (Doc. 65 at 12.)   Plaintiff

24    contends that his request was for specific documents, particularly a phone conversation

25    with Ms. LaCenia, and that specific document "was not included in the 2476 pages

26    Plaintiff was flooded with." (*Id.*)  Because this and other documents he sought were not

27    produced, Plaintiff argues that the VARO's response was inadequate.  (*Id.*)

28

1    Defendants have met their burden of showing that they conducted a search for

2    documents that was "reasonably calculated to uncover all relevant documents" by

3    presenting Jeanisse's Declaration about where he conducted the search and that it is the

4    most likely location for documents responsive to Plaintiff's request. *See Lahr*, 569 F. 3d

5    at 986; Z*emansky*, 767 F.2d at 571. Jeanisse states that Plaintiff's entire claims file was

6    sent to Plaintiff, except for his STRs, which had been provided to Plaintiff previously.

7    (Doc. 51-3 at 3 ¶ 9.) Jeanisse does not assert that any documents were withheld from

8    Plaintiff or that the VARO claimed any exemptions. Jeanisse's Declaration is entitled to

9    a presumption of good faith, and Plaintiff has not rebutted that presumption. Plaintiff

10   appears to speculate that other documents exist, but he has not shown how Jeanisse's

11   search was inadequate or even that there were any other locations where responsive

12   documents might be found. Therefore, the Court finds that the VARO's search for

13   records was adequate. *See Citizens Comm'n on Human Rights*, 45 F.3d at 1328;

14   *Iturralde*, 315 F.3d at 315; *Wilbur*, 355 F.3d at 678. Accordingly, the Court will grant

15   summary judgment to Defendants on the adequacy of the search.

16   **B.    May 20, 2013 Request**

17   Defendants argue that the search for records in response to Plaintiff's May 20,

18   2013 request was adequate and that any redactions made to the documents produced were

19   permitted under FOIA and the PA.

20   **1.    Relevant Facts**

21   By letter dated May 20, 2013, which the VARO date stamped as received on

22   July 17, 2013, Plaintiff filed a FOIA/PA request seeking copies of the following:

23   (1)    A VA letter awarding benefits to Mrs. Zaldivar dated sometime before

24   June 27, 2002;

25   (2)    A letter from Mrs. Zaldivar to the VA from around or before January 10,

26   2002 regarding the reopening of her case;

27

28

1    (3)    A "Report of Contact,"[5] VA Form 119, from Mrs. Zaldivar to the VARO

2    prior to April 19, 2002 regarding a letter from a bank;

3    (4)    The "law providing VA benefits";

4    (5)    Mrs. Zaldivar's Report of Contact to the VARO, attention "Chris," dated

5    January 1, 2002, thanking someone for their "kind assistance on the phone today";

6    (6)    A "financial status to re-open the request for apportionment that [Ms.

7    Zaldivar] filed in April";

8    (7)    A Report of Contact, VA Form 119, regarding Mrs. Zaldivar's letter to the

9    VARO dated December 26, 2001 in which she said she had called and requested a form;

10    (8)    A complete and unredacted copy of an e-mail provided on June 21, 2012

11    and "other e-mail and phone contact messages not previously released."

12    (Doc. 51 ¶ 9; Doc. 51-2 at 28-33.)

13    When Plaintiff did not receive a response to his request, he filed an appeal with the

14    VARO by letter dated July 15, 2013, asserting that he construed the failure to respond as

15    "a denial of [his] good-faith effort to obtain the relevant documents."  (Doc. 51-2 at 35-

16    36.)  The VARO did not respond to this appeal letter and decided to file it with Plaintiff's

17    claim file because it was an "invalid NOD [Notice of Disagreement]" on a pending FOIA

18    request and so no action was necessary.  (Doc. 51 ¶ 11.)  Plaintiff states that his request

19    was "specifically written as an 'appeal,' not a Notice of Disagreement," and the VARO

20    did not notify Plaintiff that they decided to take no action by filing it as a NOD letter.

21    (Doc. 65 at 9 ¶ 51.)

22    By letter dated December 18, 2014, Veterans Service Center Manager D. Luzi

23    responded to Plaintiff's request.  (Doc. 51-2 at 41-42.)  According to Plaintiff, Luzi's

24    response enclosed copies of the following:

25    (1)    An unredacted three-page letter dated September 15, 2001 from the VARO

26    to Plaintiff advising him that Mrs. Zaldivar had requested an apportionment;

27

28    [5] Defendants explain that Reports of Contacts are internal VA forms in which VA
employees summarize conversations.  (Doc. 51 ¶ 9(c).)

1    (2)    An unredacted three-page letter dated December 26, 2001 from Mrs.

2    Zaldivar containing a "Notice of Disagreement";

3    (3)    An unredacted one-page letter dated April 24, 2001 from Mrs. Zaldivar to

4    the VARO "(Re: 345/Team 3)" requesting an application for apportionment;

5    (4)    A two-page letter dated September 15, 2001 from the VARO to Mrs.

6    Zaldivar, with her address redacted, requesting information and enclosing two forms;

7    (5)    A two-page letter dated December 21, 2001 from the VARO to Mrs.

8    Zaldivar, with her address redacted, denying a claim for apportionment;

9    (6)    A one-page letter dated January 10, 2002 from Mrs. Zaldivar to the VARO,

10   "Team 3/CM (Chris)," with her social security number redacted as well as information

11   below her signature and name;[6]

12   (7)    A two-page "Financial Status Report" dated June 11, 2002 and signed by

13   Mrs. Zaldivar with her social security number, address, telephone number, and names and

14   addresses of current and former employers redacted;[7]

15   (8)    An unredacted one-page letter dated April 4, 2002 from DM Federal Credit

16   Union to VA regarding a "joint owner of account"; and

17   (9)    One page of e-mails between Mrs. Zaldivar (with her e-mail address

18   redacted) and VA personnel between June 28, 2002 and March 31, 2003.

19   (Doc. 65 at 9-10; Doc. 65-4 at 21 to Doc. 65-5 at 8.)

20   The December 18, 2014 response stated that under the PA and FOIA Exemption

21   (b)(6), the agency could not provide Rebecca J. Zaldivar's personal information such as

22   her address, social security number, and telephone number because such disclosure

23

---

24      [6] Defendants assert that the redacted information below Mrs. Zaldivar's signature

25   cannot be described because only a redacted copy exists in the VA files.  (Doc. 51

26   ¶ 12(f).)  Plaintiff responds that this letter "in its entirety was disclosed in the VARO's
     May 30, 2012 release of records.  (Doc. 65 at 10, citing Ex. R (Doc. 65-4 at 4).)

27      [7] Plaintiff asserts that this same document was released "in its entirety" with the

28   May 30, 2012 disclosure from the VARO.  (Doc. 65 at 10, citing Ex. S (Doc. 65-4 at 11-
     15.)

1    "would be an unwarranted invasion of her personal privacy" and so the information was

2    withheld.  (Doc. 51-2 at 41.)

3         By letter dated January 20, 2015, Plaintiff filed an Appeal with the OGC.

4    (Doc. 51 ¶ 19; Doc. 51-2 at 44-47.)  Plaintiff's letter stated that he was appealing the

5    response to his May 20, 2013 request and the "July 15, 2013 Appeal due to the untimely

6    response."   (Doc. 51-2 at 45.)   Plaintiff also said he was appealing "the adverse

7    determination in its entirety of December 18, 2014 from D. Luzi" because the documents

8    VARO produced had been released previously and were not new or the ones he

9    requested.  (Id.)  Plaintiff asserted that he "was very specific as to the documents being

10   sought" and "since no specific documents requested nor the regulations talked about, in

11   state civil proceedings by Ms. Rebecca Zaldivar and her attorney were provided, I will

12   continue my request through the civil complaint filed with the U.S. District Courts."  (Id.

13   at 45-46.)   Plaintiff said that one page of a two-page email was missing from the

14   documents released, that Mrs. Zaldivar's letter does not satisfy his request for a Report of

15   Contact, that her personal information such as her social security number and telephone

16   number are a matter of public record and were "supplied by Ms. Rebecca Zaldivar as an

17   adverse party to various court proceedings," and that the "disclosure of documents

18   submitted by Rebecca Zaldivar are strictly for impeachment purposes as they relate to

19   subject matter of any direct testimony given by her in civil court (state) proceedings."

20   (Id. at 46-47.)

21        On April 20, 2015, the OGC issued its Final Agency Decision in response to

22   Plaintiff's appeal.  (Doc. 51-2 at 59-63.)  The OGC Decision noted that the FOIA Officer

23   who conducted the search did not locate any Reports of Contact with the subject matters

24   described by Plaintiff, but "in an attempt to be as responsive as possible, the FOIA

25   Officer located the above-referenced documents disclosed to you which disclosures of

26   information were closely related to the subjects of your requests."  (Id. at 61.)   The

27   Decision described the FOIA Officer's search of "thousands of pages of records" in

28   Plaintiff's file, including a page-by-page search that took long hours to conduct, but still

1    no Reports of Contacts as described by Plaintiff were located.  (*Id.* at 62.)  The Decision

2    affirmed the determination that "there are no other records located within the Phoenix

3    VARO responsive to your request."  (*Id.*)

4            As to the exemptions claimed by the VARO, the Decision states that Mrs.

5    Zaldivar's social security number was properly withheld under FOIA Exemptions (b)(3)

6    and (b)(6) and 38 U.S.C. § 5701, and that her physical and email addresses, telephone

7    number, and names and locations of her current and former employe[r]s" were properly

8    withheld under FOIA Exemption (b)(6).   (*Id.* at 62.)   The OGC also found that the

9    information withheld under the PA was "about Mrs. Zaldivar and pertains only to her,"

10   and that an agency "cannot disclose any record which is contained in a Privacy Act-

11   protected file to any person except pursuant to a written request by, or with the prior

12   written consent of, the individual to whom the record pertains, unless one of twelve

13   exceptions applies (5 U.S.C. 552a(b)(1)-(1))."  (*Id.* at 63.)

14           As to Plaintiff's July 15, 2013 appeal letter to VARO, OGC advised Plaintiff that

15   "pursuant to VA regulations, the [OGC] is the only appellate authority for FOIA and

16   Privacy Act appeals (38 C.F.R. 1.559(b))."  (*Id.* at 60.)

17                  **2.       Adequacy of the Search**

18           In his Declaration, Jeanisse describes the search he conducted in response to

19   Plaintiff's May 20, 2013 FOIA request, the documents sent to Plaintiff, and the

20   information redacted.  (Doc. 51-3 at 1-7.)  Jeanisse states that he did "a page-by-page

21   review of Plaintiff's entire claims file with the VA, which encompassed thousands of

22   pages of records" and took many hours.  (*Id.* at 6 ¶ 22.)  Jeanisse further avers that "other

23   than [Plaintiff's] claims file, there is no other location in which one would reasonably

24   expect to find documents responsive to Plaintiff's May 20, 2013 request."  (*Id.*)  Jeanisse

25   asserts that he was not able to locate all of the specific documents Plaintiff requested but

26   tried to be as responsive as possible, and so disclosed several documents that "were

27   closely related to the specific documents requested."  (*Id.*)  Jeanisse also prepared a two-

28   page *Vaughn* Index describing the information redacted and the FOIA and Privacy Act

1    exemptions that allow the withholding of that information.  (*Id.* ¶ 23; Doc. 51-4 at 1-2.)

2    According to Jeanisse, "[t]hese were the only matters withheld from Plaintiff in response

3    to this request."  (Doc. 51-3 ¶ 23.)

4         Defendants argue that the search for documents in this case "was diligent and was

5    conducted using the only location that could reasonably be expected to contain the

6    requested documents."  (Doc. 49 at 10.)  Although Plaintiff asserted in his appeal to the

7    OGC that documents exist that were not found during the VARO's search, Defendants

8    argue that the standard is whether the search conducted was adequate, "'not whether

9    responsive documents might possibly exist.'"   (*Id.*, quoting *Citizens Against UFO*

10   *Secrecy, Inc. v. DOD*, 21 Fed. App'x 774, 775 (9th Cir. 2001).)

11        Plaintiff responds that his request "stems from a divorce hearing based on

12   Plaintiff['s] ex-spouse attempting to force funds from Plaintiff (Exhibit Z) after his

13   conviction but before he was sentenced."   (Doc. 65 at 12.)   Plaintiff asserts that the

14   "closely related documents" provided by the VARO do not fulfill his FOIA/Privacy Act

15   request and that the VARO's search for responsive records "remain[s] elusive."  (Doc. 64

16   at 12.)  Plaintiff contends that the "VARO's release of documents dated May 30, 2013

17   revealed three contact notes" from June 7, 2001, June 30, 2001 and April 24, 2002, yet

18   the "VARO claims none exist."  (Doc. 64 at 12-13, citing Doc. 65-6 at 23, 25 and 27.)

19   Plaintiff states that he "merely seeks the disclosure of information and documents

20   relevant to the testimony of Ms. Zaldivar in civil and criminal trial hearings."  (*Id.* at 13,

21   citing *Vaughn v. Rosen*, 484 F.2d 82, n.23 (D.C. Cir. 1973).)

22        Plaintiff appears to challenge the adequacy of the search for documents responsive

23   to his May 20, 2013 request, but only obliquely.  Plaintiff argues that the "closely related

24   documents" do not fulfill his request, but that does not demonstrate that the VARO's

25   search for records was inadequate.  Plaintiff cites to three Reports of Contact that he says

26   VARO disclosed to him "by letter dated May 30, 2013,"[8] but he does not explain why

27   _____

28        [8] There is no VARO letter dated May 30, 2013 in the record, and it is possible
     Plaintiff meant that VARO provided these documents in its May 30, 2012 response to his

1    these three documents are significant.  Plaintiff's May 20, 2013 request sought three

2    Reports of Contact with Mrs. Zaldivar dated December 26, 2001, January 1, 2002 and

3    sometime prior to April 19, 2002, but VARO did not locate those documents.  The three

4    Reports of Contact Plaintiff says were previously disclosed are dated June 7, 2001,

5    June 30, 2001, and April 24, 2002, and do not appear to be the documents he sought in

6    his May 20, 2013 request.  Therefore, it is not clear if Plaintiff is arguing that because

7    three Reports of Contact were released to him, there must be others, or if he is arguing

8    something else altogether.  Nevertheless, the prior release of Reports of Contacts does not

9    support that VARO's search was inadequate.

10    Defendants have met their burden of showing that they conducted a search for

11    documents that was "reasonably calculated to uncover all relevant documents" by

12    presenting Jeanisse's Declaration about where he conducted the search and the methods

13    he used.  *See Lahr*, 569 F. 3d at 986; *Zemansky*, 767 F.2d at 571.  Jeanisse's Declaration

14    is entitled to a presumption of good faith, and Plaintiff has not rebutted that presumption.

15    Plaintiff appears to speculate that other documents exist, but he has not shown or even

16    argued how Jeanisse's search was inadequate.  Therefore, the Court finds that VARO's

17    search for records was adequate.  *See Citizens Comm'n on Human Rights*, 45 F.3d at

18    1328; *Iturralde*, 315 F.3d at 315; *Wilbur*, 355 F.3d at 678.  Accordingly, the Court will

19    grant summary judgment to Defendants on the adequacy of the search.

20                    **3.      Exemptions**

21    VARO argues that it properly redacted certain information about Plaintiff's former

22    wife pursuant to FOIA Exemption (b)(6) and the PA.  (Doc. 49 at 10-11.)

23                    **a)      FOIA Exemption (b)(6)**

24                    **(1)      Legal Standard**

25    FOIA Exemption (b)(6) exempts "personnel and medical files and similar files the

26    disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

27    5 U.S.C. § 552(b)(6).   To determine whether a record is properly withheld under

28    _____

April 26, 2012 request.

- 15 -

1    Exemption (b)(6), the court "must balance the privacy interest protected by the

2    exemptions against the public interest in government openness that would be served by

3    disclosure." *Lahr*, 569 F.3d at 973.  Exemption (b)(6) "requires that the invasion of

4    privacy be 'clearly unwarranted'" and that disclosing the information "'would constitute'

5    an unwarranted invasion of privacy." *Id.* (quoting *U.S. Dept. of Justice v. Reporters*

6    *Comm. for Freedom of the Press*, 489 U.S. 749, 755-56 (1989)).  When the government

7    "has identified a cognizable privacy interest, 'the only relevant public interest in the

8    FOIA balancing analysis is the extent to which disclosure of the information sought

9    would shed light on an agency's performance of its statutory duties or otherwise let

10   citizens know what their government is up to.'" *Id.* (quoting *Bibles v. Or. Natural Desert*

11   *Ass'n*, 519 U.S. 355, 355-56 (1997)).

12                            **(2)    Analysis**

13        Defendants assert that the only information redacted by the VARO under

14   Exemption (b)(6) is the "private contact information of Plaintiff's ex-spouse and her

15   social security number." (Doc. 59 at 13, citing *Vaughn* Index.)  They argue that "this is

16   wholly private information and sheds no light on the VA's conduct." (*Id.*)

17        Plaintiff responds that "any redaction of the personal information of Plaintiff's ex-

18   spouse has been waived." (Doc. 64 at 13.)  Plaintiff asserts that the "VARO voluntarily

19   surrendered documents in its May 30, 2012 disclosure in its entirety, without redactions,

20   as clean copies" and that Mrs. Zaldivar "has also released documents on her own behalf

21   as exhibits when the need arises." (*Id.* at 13-14, citing Doc. 65 ¶¶ 30, 52 and Exs. H, P-

22   S.)  Plaintiff does not say specifically what information has previously been released, but

23   argues that Mrs. Zaldivar "has never exercised her right to privacy or confidentiality nor

24   has VARO produced such document on record," and so Mrs. Zaldivar "has waived her

25   right to non-disclosure under the Privacy Act." (*Id.* at 14.)

26        Plaintiff has not identified what public interest would be served by the disclosure

27   of Mrs. Zaldivar's contact information and social security number.  Even assuming Mrs.

28   Zaldivar had disclosed the information in some other proceeding or the agency did not

1    assert the exemption in a prior release of records, such disclosure still fails to shed light

2    on how the agency performed its statutory duties in Plaintiff's case.  *See, e.g., Fiduccia*,

3    185 F.3d at 1047 (holding that the privacy interests of the individuals involved

4    outweighed the FOIA purpose of disclosure even though the information may have been

5    disclosed in "various courthouses").  Nor does Plaintiff's citation to an Eighth Circuit

6    case discussing FOIA Exemption (b)(5) compel disclosure of the information withheld by

7    VARO under Exemption (b)(6).  *See North Dakota v. Andrus*, 581 F.2d 177 (8th Cir.

8    1978) (holding that the government waived its right to assert Exemption (b)(5), which

9    exempts from disclosure certain "inter-agency or intra-agency memorandums or letters,"

10   because the government had previously disclosed the documents to counsel in a separate

11   litigation).  The *Andrus* case involved the government's waiver of its own right to assert

12   Exemption (b)(5), whereas here the government is asserting Exemption (b)(6) as to the

13   disclosure of Mrs. Zaldivar's information.  Moreover, to the extent Plaintiff claims he has

14   already received the documents he is complaining were not disclosed in their entirety, his

15   request for records would be moot.

16        Accordingly, the Court will grant summary judgment to Defendants on claimed

17   FOIA Exemption (b)(6).

18                           **b)      Privacy Act Exemption**

19                           **(1)      Legal Standard**

20        The Privacy Act governs the disclosure of, access to, and amendment of records

21   on individuals that are maintained by federal agencies."  *Lane v. Dep't of Interior*, 523

22   F.3d 1128, 1138-39 (9th Cir. 2008) (citing 5 U.S.C. § 552a).  Thus, "an individual may

23   'gain access to his [or her] record' upon request, *id.* § 552a(d)(1), and a cause of action

24   arises if an agency refuses to comply with a request, *id.* § 552a(g)(1)(B)."  *Id.* at 1139.

25   On the other hand, the PA prohibits disclosure of "any record" to any person or agency

26   unless there is a written request by or written consent of the individual to whom the

27   record pertains," subject to certain exceptions.  *Id.*  The government "need not show that

28   it produced every responsive document, but only that the *search* for those documents was

1    *adequate*."   *Id.* (quoting *Zemansky*, 767 F.2d at 571) (emphasis in original).   The

2    government may show that its search was adequate by providing "reasonably detailed,

3    nonconclusory affidavits submitted in good faith."   *Zemansky*, 767 F.2d at 571 (quoting

4    *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

5                                    **(2)      Analysis**

6            Defendants argue that the information Plaintiff claims he should have access to—

7    the redacted contact information and social security number of his ex-spouse—"are not

8    records pertaining to [Plaintiff]," even if the information can be found in his claim file.

9    (Doc. 49 at 14.)   They assert that Plaintiff's "filings alone demonstrates his desire to

10   retaliate against his ex-spouse since being convicted of numerous counts of sexual abuse

11   and sexual contact with a minor in a proceeding where his ex-spouse was the 'key

12   prosecution witness.'"   (*Id.*, citing Doc. 51 ¶ 21, Doc. 51-2 at 65-66, Doc. 1 ¶ 20.)

13   Defendants argue that Plaintiff's situation "is on all fours" with the situation in

14   *DePlanche v. Califano*, 549 F. Supp. 685, 693-98 (W.D. Mich. 1982), a case in which a

15   father sought access to a social security benefits file accessible by the father's social

16   security number that contained the address of his minor children.   The court in

17   *DePlanche* denied access to the address, finding that the information was not the father's

18   record within subsection (a)(4) or information pertaining to him under subsection (d)(1)

19   of the Privacy Act.  *Id.* at 694-96.

20           Plaintiff responds generally that his former wife "has waived right to non-

21   disclosure under the Privacy Act and VARO's release of documents surrendered

22   documents as clean copies makes VARO's rights waived as well in protecting the

23   information." (Doc. 64 at 13-14.)  Plaintiff does not argue that the information withheld

24   under the PA pertains to him and not to his wife, or that she has consented to such

25   disclosure.  The Court accordingly will grant summary judgment to Defendants on the

26   withholding of the information relating to Plaintiff's former spouse under the Privacy

27   Act.

28   / / /

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 49).

(2)    Defendants' Motion for Summary Judgment (Doc. 49) is **granted**, and this action is terminated with prejudice.  The Clerk of Court must enter judgment accordingly.

Dated this 22nd day of August, 2016.


David G. Campbell
United States District Judge